UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HELEN GESLAK,

        Plaintiff,

        -against-

**MEMORANDUM & ORDER**
06-CV-251 (NGG) (AKT)

SUFFOLK COUNTY, SHERIFF ALFRED C. TISCH, in
his Official Capacity, and THOMAS MURPHY,

        Defendants.
------------------------------------------------------------x
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Helen Geslak ("Plaintiff" or "Geslak") was a corrections officer employed by Defendant Suffolk County ("County") and supervised by Defendants Sheriff Alfred C. Tisch ("Tisch") and Thomas Murphy ("Murphy"). Plaintiff brings suit against Defendants alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1983 ("§ 1983"), and the New York Human Rights Law ("NYHRL"), and claiming breach of a consent decree issued in the case of Bellows v. Suffolk County, 80-CV-2643 (JBW) (E.D.N.Y. 1980). Among other things, Plaintiff cites Defendants' failure to promote Plaintiff to the position of deputy warden and Defendant Murphy's allegedly discriminatory and hostile remarks to Plaintiff in the workplace. Defendants move for summary judgment on Plaintiff's Title VII, Section 1983, and NYHRL claims. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

I.     **FACTUAL BACKGROUND**

*Plaintiff*

Geslak began working for Suffolk County on or about March 1, 1982 as a corrections

officer at the Riverhead Maximum Security Facility ("Riverhead"). (Geslak March 27, 2003 Deposition ("Geslak I Dep.") at 10-11.) Plaintiff was appointed to the position of sergeant in 1992, lieutenant in 1996, and captain in 2000. (Id. at 10; Geslak February 6, 2007 Deposition ("Geslak II Dep.") at 12-13, 38.) From 1996 until 2000, she was a supervisor of the Environmental Control Unit, and her job responsibilities included supervising sergeants and corrections officers. (Id. at 15.)

*Defendant Murphy*

In 2000, Murphy was a lieutenant at Riverhead. (Id. at 18-19.) Subsequently, Murphy began attending political functions run by Tisch, who was sheriff of the Riverhead facility at the time. Murphy donated a total of about $5,000 to Tisch's campaign to be sheriff and manned a "phone bank" for Tisch's re-election campaign in 2005. (Murphy Dep. at 32-41.) Murphy was made provisional warden in August or September 2002, and he was promoted to warden in 2003. (Murphy Dep. at 21, 26.) Murphy's office was near Tisch's office, and they would speak once or twice per week. (Id. at 24, 31.) While Murphy was provisional warden, he "input" matters related to employees, such as transfers, demotions, promotions, hiring, firing, and employee conflicts. (Id. at 20, 22, 24.) He was responsible for supervising lieutenants through the captains, and as such, he had supervisory authority over Geslak. (Id. at 46-47.)

*Murphy's Comments to Plaintiff*

Plaintiff claims that virtually everything Defendant Murphy said to her contained offensive language and sexual innuendo. (Geslak I Dep. at 53, 62.) In 1994 or 1996, during a class Plaintiff and other female correction officers attended, Murphy made a comment about women being stupid. (Geslak II Dep. at 65.) In 1995 or 1996, Plaintiff overheard Murphy

-2-

talking to his children on the telephone wherein Murphy screamed obscenities. (Id. at 49.) In July 2000, Murphy made comments of a lewd and sexual nature in Plaintiff's presence, although the comments were not directly about Plaintiff. (Id. at 52.) From 2000 through October 2002, Murphy "had a habit of coming into [Plaintiff's] office" and commenting that Murphy's wife, whom he referred to as "that bitch," was "addicted to [Murphy] like crack cocaine," because "she can never get enough." (Id. at 53-54; Geslak I Dep. at 51.) In 2002, while a deputy warden or provisional warden, Murphy said that he was going to have to "step on [a male subordinate's] dick," referred to a male corrections officer as a "fucking C[unt],[1]" and told Plaintiff, "You're the fuckin' woman, you make the coffee." (Geslak I Dep. at 46-50; Geslak II Dep. at 56-57, 61.)

*Promotion to Deputy Warden Status*

The civil service requirements for becoming Deputy Warden specified that a candidate could be either a lieutenant or a captain. (Geslak Dep. at 36-38.) Decisions about promotions were made by Defendant Tisch with the advice of Undersheriff Walter Denzler ("Denzler"), who, in turn, consulted with Defendant Murphy. (Tisch Dep. at 16-18; Murphy Dep. at 62.) Murphy believed that everyone under consideration for promotion to deputy warden was qualified for the position, including Plaintiff, although he did not believe her to be the most qualified of all those being considered. (Murphy Dep. at 61.) Murphy informed Denzler that Geslak ran her command well. (Id. at 62.)

In 1999, Geslak took the test for deputy warden but was not appointed to that position. (Geslak II Dep. at 16-17.) In or about March 2000, Defendant Lieutenant Murphy and Captains

---

[1] Plaintiff spelled the word when recounting Murphy's statement.

Pasquale Antonucci and Charles Ewald were appointed as deputy wardens. (Id. at 18-19.) Ewald had fifteen years of service whereas Geslak had seventeen years of service. (Id. at 26.) Murphy and Antonucci obtained higher scores on the deputy warden test than did Plaintiff. (Id. at 19.)

In or about April 2002, Lieutenant Joseph Rubacka ("Rubacka") was appointed as deputy warden. (Id. at 29.) The deputy warden position to which Rubacka was appointed was specifically created for him to be eligible to take the test to become chief of staff, as it was intended that he would be the successor to then-Chief Alan Otto. (Tisch Dep. at 26-27.) Rubacka performed very detailed administrative functions and was considered to be valuable to the Office of the Sheriff. (Id. at 27-28.) He had more years of service than Plaintiff, obtained the same score on the 1999 Deputy Warden Exam as Plaintiff, and had a lower rank than Plaintiff in 2002. (Geslak II Dep. at 30, 38.)

In October 2002, Lieutenant William Conover was appointed a deputy warden. (Id. at 31-32.) He received the same score on the exam as Plaintiff, had a lower rank than Plaintiff, and may have had one or two more years of service than Plaintiff. (Id. at 32-33, 35, 39.)

In December 2002, Captain Robert Hervan ("Hervan") was appointed to the position of deputy warden. (Id. at 34.) His promotion was based upon a recommendation to Defendant Tisch by Denzler. (Tisch Dep. at 29, 31-32.) Geslak had a higher exam score than Hervan and had more time in the rank of captain than Hervan, although Hervan had more years of total service. (Geslak II Dep. at 35.)

*Complaint*

After these events, Plaintiff made a number of requests to have a meeting with Tisch to

discuss Murphy's behavior. These requests were ignored. (Geslak Aff. ¶ 13.) In October 2002, she wrote a letter to Tisch alleging sexual harassment and failure to promote; Plaintiff never received a response. (Tisch Dep. 21-23; Geslak I Dep. at 75-76.) On November 12, 2002, Plaintiff filed an internal complaint about Murphy, after which he stayed away from her. (Geslak II Dep. at 72, 101-02.) In December 2002, Geslak was forced to move out of her office so that a new deputy warden could use it. (Id. at 72-76; Hervan Aff ¶¶ 4-5.) In addition, she was no longer advised about meetings and/or assignments given by Murphy to visiting officers and sergeants. (Geslak II Dep. at 72-73.) Her failure to be advised about assignment designation violated Riverhead protocol. (Id.)

On January 19, 2004, Plaintiff filed a discrimination complaint with the EEOC and the New York State Division of Human Rights alleging gender discrimination. (Geslak Aff. ¶ 14; Def. Rule 56.1 Statement ¶ 67; Pl. Rule 56.1 Statement ¶ 67.) In January 2006, Plaintiff was assigned as a commanding officer of the Yaphank facility. (Geslak II Dep. at 87.) In 1989 or 1990, she began to see a social worker and a doctor for anxiety, and her medications were increased in 2003 as a result of not having been appointed warden. (Id. at 90-97.)

## II. CLAIMS

Plaintiff brought suit against Defendants alleging that: 1a) Defendants engaged in a pattern and practice of unlawful discrimination by denying Plaintiff promotions and the corresponding increases in pay on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2e-2000e-17; 1b) Defendant County violated Title VII by failing to adequately supervise, control or disciple and/or otherwise penalize the conduct, acts and failures to act of Defendants Tisch and Murphy; 1c) Defendants County and Tisch violated Title

VII by failing to adequately supervise, control or disciple and/or otherwise penalize the conduct, acts and failures to act of Defendant Murphy; 2a) Defendants engaged in a pattern and practice of unlawful sexual harassment and created a hostile work environment by subjecting Plaintiff to unwelcome comments of a sexual and/or profane nature in violation of 42 U.S.C. § 1983 et seq.; 2b) Defendants unlawfully retaliated against Plaintiff by failing to promote her because she openly and expressly opposed the sexual harassment in violation of 42 U.S.C. § 1983 et seq.; 3a) Defendants engaged in a pattern and practice of unlawful sexual harassment and created a hostile work environment by subjecting Plaintiff to unwelcome comments of a sexual and/or profane nature in violation of NYHRL Section 296(a), (e); 3b) Defendants unlawfully retaliated against Plaintiff by failing to promote her because she openly and expressly opposed the sexual harassment in violation of NYHRL Section 296(a), (e); and, 4) Defendants violated the consent degree issued against them in Bellows v. Suffolk County, 80-CV-2643 (JBW), by engaging in unlawful discrimination against a female corrections officer and retaliating against her.

## III. LEGAL ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), i.e., "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "A fact is 'material' for these purposes if it might affect the outcome of the suit under the governing law. An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." Holtz, 258 F.3d at 69 (internal quotations and citations omitted).

The moving party bears the burden of establishing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the moving party has met this burden, then the non-moving party has the burden of "set[ting] forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion thrugh mere speculation or conjecture." W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citations omitted); see also Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the nonmovant can create a genuine issue of material fact only by citing competent, admissible evidence. Glasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 574 (S.D.N.Y. 2004) (citing Sarno v. Douglas Elliman-Gibbons & Ives, 183 F.3d 155, 160 (2d Cir. 1999)).

## B. Analysis

Defendants contend that Plaintiff's Title VII, Section 1983, and NYHRL claims are not timely and should therefore be dismissed. For the reasons set forth below, Defendants' motion for summary judgment as to claims one (Title VII) and two (Section 1983) are granted. Claim three (NYHRL) is granted as to Defendant County only.

### i. Title VII

Defendants contend that Plaintiff's Title VII hostile work environment and retaliation claims are untimely because none of the alleged discriminatory or hostile acts took place within 300 days of January 19, 2004, the date on which Plaintiff filed a complaint with the New York State Division of Human Rights and the EEOC. (Defendants' Memorandum of Law In Support

of Motion for Summary Judgment ("Def. Mem.") at 6-7.)

Prior to filing a Title VII claim in federal court, a plaintiff must institute proceedings with a state or local agency within 300 days. 42 U.S.C. § 2000e-5(e); Nat'l R.R. Passenger Corp. (AMTRAK) v. Morgan, 536 U.S. 101, 108-09 (2002) ("In the context of a request to alter the timely filing requirements of Title VII, this Court has stated that 'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'") (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)); see also Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S. Ct. 2162 (May 29, 2007). These statutory filing periods are "analogous to . . . statute[s] of limitations," Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996), and, as such, "a failure to timely file a charge acts as a bar to a plaintiff's action," Butts v. N.Y. City Dep't of Hous. Pres. & Dev., No. 00-CV-6307 (KMK), 2007 U.S. Dist. LEXIS 6534, at *20 (S.D.N.Y. Jan. 29, 2007) (citing Hill v. Citibank Corp., 312 F. Supp. 2d 464, 472 (S.D.N.Y. 2004)); see also McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 214 (2d Cir. 2006). This "statute" of limitations begins to run for each discrete discriminatory or retaliatory act when each act occurs. See Morgan, 536 U.S. at 114; Hill, 312 F. Supp. 2d at 472.

Accordingly, in this case, claims for relief under Title VII that took place more than 300 days prior to January 19, 2004 – meaning, any act prior to March 25, 2003 – would generally be time barred. The latest date on which an act of discrimination or retaliation took place was in December 2002, when Hervan was promoted to Deputy Warden instead of Plaintiff, and when Plaintiff was forced to move out of her office. As Plaintiff concedes, her Title VII claim was brought more than 300 days after the last alleged act of discrimination or retaliation. (Plaintiff's

Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem.") at 13.) She counters that her Title VII claim is nevertheless timely because Defendants committed a continuing violation and the limitations period should therefore be extended. (Id. at 13-17.) However, the limitations period may only "be delayed until the last discriminatory act in furtherance of it." Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994). Because the last alleged discriminatory act is outside of the 300 day limitations period, Plaintiff's claim remains untimely. Defendants' motion for summary judgment as to claim one is therefore GRANTED.

### ii. Section 1983

Because 42 U.S.C. § 1983 contains no statute of limitations, the limitations period applicable to § 1983 actions is determined by reference to state law. Fiesel v. Bd. of Educ. of City of N.Y., 675 F.2d 522, 524 (2d Cir. 1982). The appropriate statute of limitations for § 1983 actions brought in New York is three years from the date "the plaintiff knows or has reason to know of the injury that is the basis of the action." Pauk v. Board of Trustees of the City Univ. of N.Y., 654 F.2d 856, 859, 861 (2d Cir. 1981). Unlike Title VII claims, however, the statute of limitations period under Section 1983 "is not tolled by the filing of an administrative claim." Tuckett v. Police Dept. of City of N.Y., 708 F. Supp. 77, 78 (S.D.N.Y. 1989) (citing Board of Regents v. Tomanio, 446 U.S. 478 (1980) (holding that New York rule against tolling for the time a plaintiff pursues a related action in state courts applies to cases brought under § 1983); Johnson v. Railway Express Agency, 421 U.S. 454 (1975) (holding that the limitations period applicable under § 1981 is not tolled by the filing of an EEOC charge); Zangrillo v. Fashion Institute of Tech., 601 F. Supp. 1346 (S.D.N.Y.), aff'd, 788 F.2d 2 (2d Cir. 1985) (holding that cause of action under § 1983 is separate from a Title VII action, and thus the statute of

limitations period under § 1983 should not be tolled during the period plaintiff pursues administrative remedies)).

Plaintiff's Complaint was filed on January 20, 2006, more than three years later than December 2002, the month in which the most recent discriminatory or retaliatory incident occurred. Consequently, Defendants' motion for summary judgment with respect to claim two is GRANTED.

### iii. NYHRL

Claims brought pursuant to Section 296 of the NYHRL are governed by New York County Law Section 52, which sets forth the statute of limitations and notice-of-claim requirement for suits against a county. Specifically, it states:

> Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature . . . *and any other claim for damages arising at law or in equity*, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law. Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law.

N.Y. County Law § 52(1) (emphasis added). N.Y. Gen. Mun. Law Section 50-i: 1) imposes a limitations period of 190 days from the date of the event upon which the claim is based; 2) requires that a notice of claim be filed in accordance with Section 50-e; and, 3) requires that at least thirty days have elapsed "since the service of such notice and that adjustment or payment thereof has been neglected or refused."

N.Y. Gen. Mun. Law Section 50-e requires that a plaintiff file a notice of claim prior to commencement of an action against a municipality and serve the notice of claim within ninety

days after the claims arises. See Mills v. County of Monroe, 59 N.Y.2d 307, 309-10 (N.Y. 1982) (affirming Fourth Department's holding that an Executive Law Section 296 claim against a county, although not directly subject to the notice provisions in New York General Municipal Law Sections 50-e, 50-i, was dismissed for failing to comply with the notice of claim requirements of New York County Law Section 52, which incorporates General Municipal Law Sections 50- e, 50-i); Feldman v. Nassau County, 349 F. Supp. 2d 528, 538-39 (E.D.N.Y. 2005) (holding that County Law Section 52 requirements applied to discrimination suits against counties pursuant to NYHRL).

The notice-of-claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action. Warner v. Village of Goshen Police Dept. 256, 256 F. Supp. 2d 171, 174-75 (S.D.N.Y. 2003). "A plaintiff's failure to comply with the mandatory New York statutory notice-of-claim requirements generally results in dismissal of his claims." Id. (citing Hyde v. Arresting Officer Caputo, No. 98 CV 6722 (FB), 2001 WL 521699, *4 (E.D.N.Y. May 11, 2001)).

Here, Plaintiff does not allege, and there is nothing in the record to suggest, that Plaintiff complied with New York State's notice-of-claim requirements with regard to Defendant County. With respect to Defendant Tisch, who is sued in his official capacity, Defendants do not argue that Section 52's provisions apply to Tisch as the County's agent or employee, or that the notice-of-claim requirement applies to Defendant Murphy, sued as an individual. (See Def. Reply Mem. at 2-3.) Indeed, Section 52 states specifically that it applies only to "[a]ny claim or notice of claim *against a county* . . ." N.Y. County Law § 52(1) (emphasis added). Therefore, there is no basis upon which to conclude that claims against Defendants Tisch or Murphy would be

-11-

subject to Section 52's notice-of-claim requirement.

Indeed, with respect to Defendants Tisch and Murphy, Defendants claim merely that Plaintiff's claims brought pursuant to NYHRL are time-barred because they are subject to a 365-day statute of limitations which accrued from the date of the filing of her complaint on January 19, 2004. (Def. Mem. at 7.) Defendants are incorrect. Plaintiff's NYHRL claims against non-county defendants are governed by a three-year statute of limitations, N.Y.C.P.L.R. § 214; Crews v. Trustees of Columbia Univ. in City of N.Y., 452 F. Supp. 2d 504, 525 n.5 (S.D.N.Y. 2006); Murphy v. American Home Products, 58 N.Y.2d 293, 307 (N.Y. 1983), and "the statute of limitations is tolled during the pendency of a complaint with the Division of Human Rights," Penman v. Pan American World Airways, Inc., 69 N.Y.2d 989 (N.Y. 1987) (citing N.Y.C.P.L.R. 204(a)). Consequently, all claims which arose after January 19, 2001 – three years prior to the filing of Plaintiff's complaint with the Division of Human Rights on January 19, 2004 – are timely. Here, the events which are timely are the following: 1) Murphy made comments to Plaintiff in 2002 that women should make the coffee, Murphy's wife was a "bitch," and a male corrections officer was a "C[unt]"; 2) Rubacka, Conover, and Hervan were appointed as deputy wardens instead of Plaintiff; 3) Tisch ignored requests made by Plaintiff to discuss Murphy's behavior and her failure to be promoted; and, 4) Plaintiff was subsequently forced to move out of her office and was no longer advised about meetings and/or assignments in violation of facility policy.

A plaintiff alleging discrimination in employment has the initial burden to establish a prima facie case of discrimination. Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 (N.Y. 2004). To meet this burden, Plaintiff must show that (1) she is a member of a protected

-12-

class; (2) she was qualified to hold the position of deputy warden; (3) she was denied promotion to deputy warden status; and, (4) the denial of promotion occurred under circumstances giving rise to an inference of discrimination. See id.

Here, Plaintiff, a female corrections officer, obtained the same or higher score than male correction officers who were promoted to deputy warden instead of Plaintiff. She was of either the same or higher rank as the male officers who were promoted instead of her. Plaintiff has also adduced evidence that upon complaining about the situation, she was forced from her office and was no longer notified about important events occurring in the facility, in violation of the facility's protocol. Finally, there is evidence that Plaintiff's supervisor, Murphy, made profane comments to her which often demonstrated a bias against women. Relying solely on the events occurring after January 19, 2001, Plaintiff has met her initial burden of proof, and there is a triable issue of fact as to whether Plaintiff was subjected to sexual harassment, retaliation, and hostile work environment.[2]

---

[2] The court notes that Defendants do not argue that Plaintiff has not met her burden of proof with respect to her NYHRL claims, but instead solely challenge the proof regarding Plaintiff's Title VII and Section 1983 claims. (See Def. Mem. at 7-20.)

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Claims one and two are hereby dismissed, and claim three is dismissed as against Defendant County.

SO ORDERED.

Dated: December 21, 2007
       Brooklyn, N.Y.

/signed/
NICHOLAS G. GARAUFIS
United States District Judge